WINDSOR,
February.
1836.

Emerson
vs.
Udall.

---

D. Rix Administrator of J. Smith vs. The Heirs of J. Smith.

An administrator advancing money, in good faith for the estate, and being guilty of no neglect nor unreasonable delay in converting the effects into money, will be allowed interest on his advances.

So, where he applies for an order of sale, to satisfy a balance due him, which is resisted by the heirs, he will be allowed his services and expenses in closing the trust, provided he succeed in establishing his claim. But if his claim be found unfounded, it is otherwise.

The sentence or decree of the probate court is conclusive, as to all matters, which appear from the record to have been actually adjudicated upon. But claims by or against an administrator, which are not brought under consideration in the adjustment of his account, are not concluded by the finding.

An administrator settled his account in 1820. In 1832, (the estate not having been fully settled in 1820,) he applied for a settlement of a subsequent account, which was done—upon appeal from the decree of the probate court upon the last adjustment, held, that it was not competent to overhaul the settlement of 1820, or to correct any errors occurring therein.

After argument by

Aikens and Edgerton, for the Heirs of Smith & Hubbard, and Freeman and Hutchinson, for the Administrators,

The opinion of the court was delivered by

PHELPS, J.—The case comes before us upon exceptions to the report of the commissioners appointed to adjust the account of the administrator.

As both parties have excepted to the report, and thus brought into controversy the claims on both sides, it will be convenient to consider, first, the claims of the administrator with the objections thereto, and secondly, the claims of the heirs upon him which are also objected to.

The claims of the administrator, as presented by him to the commissioners, are as follows, viz :

1. Balance of his account, as adjusted and settled by the
   probate court in January 1820,                    $332,58.
2. Interest on the same, from January 1820 to the present time,                                   262,54.
3. Certain charges for services subsequent to the former
   adjustment in 1820,                                59,96.

Making in all the sum of                             655,08.

WINDSOR,
*February*,
1836.
Rix
*vs.*
Smith·

And he has given a credit of .                          309,00.

Leaving a balance of                                   $346,08.
which was allowed.

The appelants object,

1. To the allowance of interest on the former balance of $332,58, upon the ground that an administrator, is not in any case to be allowed interest on a balance due to him from the estate. But we are unable to perceive any good reason for denying interest in such a case, when from the circumstances of the case, it is equitable. It is certainly immaterial, whether interest be paid to the administrator or the creditors of an estate. Cases may and do occur, where it becomes necessary for the administrator to advance money, to prevent a sacrifice of property ; and where this is done, and the interest of the estate promoted thereby, no possible reason can be assigned why the administrator should not receive interest. The only ground upon which it can be refused, is an unreasonable and unnecessary delay on the part of the administrator, in converting the effects into money, to the prejudice of the estate. When such is the case, there is a very satisfactory reason for not charging an estate with the accumulation of interest. In this case, it appears that the balance was, or at least might have been, ascertained in January 1824, the period when the last credits were made, and when the administration appears to have been closed, except so far as this proceeding is concerned, which has for its object merely the satisfaction of the balance due the administrator, by means of a sale of real estate. It appears that certain sums due the estate were not realized until January 1824. Up to this time, the administrator might reasonable delay, in ∫expectation of receiving those sums in satisfaction of his debt, and his suffering his claim to rest, with this view, in preference to resorting to a sale of real estate, was probably for the advantage of the estate, and ought not to prejudice his claim for interest. We thererefore allow the interest on the balance due in January 1820 to January 1824. But from this period down to February 1832, when this proceeding was instituted, there appears to have been no steps taken by the administrator to recover this balance, nor indeed any means of satisfying it, except by sale, a sale of real estate. Why the administrator did not apply for an order of sale, during this period of eight years, or why he should have slept upon his claim until February 1832, when he petitioned for a sale of real estate, we are not informed. In the absence then, of all excuse for this de-

lay, we are bound to consider it as unnecessary and unreasonable, and as tending to the prejudice of the estate, by an unnecessary accumulation of interest. We therefore allow no interest for this period. But from February 1832, when measures were taken to recover the balance, to the present time, during which period the collection has been delayed by the resistance of the heirs, interest is allowed.

WINDSOR,
February,
1836.

Rix
vs.
Smith.

The next objection is to the claim for services rendered subsequent to the settlement of 1820, upon the ground, that the object and purpose of these services was merely to realize a balance supposed by the administrator to be due to himself, and that he ought not to charge the estate, for services rendered, in merely prosecuting a claim of his own.

This claim depends, in a great measure, upon the result of the accounting. If the administrator has pursued a groundless claim, it is very clear that he ought not to charge his services upon the estate. But if, on the other hand, the claim be well founded, and he has been prevented from closing his trust by the groundless opposition of those interested in the estate, we consider his services, in bringing the matter to a close, as necessary and proper, and that he is entitled to reasonable compensation. We therefore allow the claims of the administrator, with the correction in the particular of interest, as mentioned above.

We come now to the claims of the heirs upon the administrator. These are,

1. A claim for sundry dues to the estate, from sundry persons, claimed to have been received by said administrator and never credited,                                  $48,99.
2. A claim for the amount of $138,16, paid to said administrator by one Kimball, under the circumstances heretofore mentioned,                                           138,16.
3. The sum of $83,16, as an error in the former settlement, .                                                              83,16.

With respect to the first of these claims, it may be disposed of at once, upon the ground that the commissioners have found, that in point of fact, these sums were never received by the administrator.

To the two remaining claims it is objected,

1. That they are not properly before us for adjudication, and

2. That the subject is concluded by the decree of the probate court in January 1820.

These items, it is argued, were not presented to the probate court, upon the occasion of the adjustment of the administrator's

WINDSOR,
February,
1836.

Rix
vs.
Smith.

account, and the decree from which this appeal is taken, and can not, it is insisted, be considered here.

The question then is, what is involved in this appeal ? *Prima facie* the whole account. The appeal has reference to the result of the adjustment below, and brings before this court every thing which is involved in that enquiry. The adjudication below is, that a certain balance is due to the administrator. The correctness of this adjudication is to be tested by an examination of the whole account, and the appeal, from its very nature, brings the whole subject before this court, to be decided, not upon the precise evidence there exhibited, but upon any and every consideration which is legally pertinent to the issue. We are not restricted by the decision of the probate court, nor the evidence there exhibited ; but, as in all other cases of appeal, we are to proceed to a trial *de novo*, upon the same principles, and in the same mode, as if no adjudication has been had upon the subject ; and the party has the same right as he originally had to rely upon any consideration, either or law or fact, which he may deem proper, with this only restriction, that it be pertinent to the issue.

This being the case, we can not separate the account or reject any claim which may have a bearing upon the result ; and if the claims here made, are well founded in themselves, it is no valid objection to them, that they were not in fact presented to the probate court.

The next objection is, that these claims are concluded by the adjustment and the decree of the probate court in January 1820.

The claim for $138,16, arises in this way. It appears that the intestate Smith was treasurer of the town of Royalton, and upon his decease, a claim in behalf of said town was presented to the commissioners on his estate, and allowed at the sum of $309,47 ; it being a balance of certain taxes supposed to have been received by him as treasurer. In truth however, a part of these taxes have never been collected, but were afterwards collected by the collector and paid into the treasury, and thus satisfied to the amount of $138,16, the claim thus allowed to the town against the estate of said Smith. Yet upon the settlement in 1820, the administrator was allowed for the whole sum of $309,47, as having been paid by him, without any deduction for said sum of $138,16, thus paid by the collector.

The other claim for $83,16 is, in substance, a claim for an over-credit to the administrator in that settlement. It is alleged that a certain claim, allowed and reported by the commissioners at $84 dollars, was in fact but 84 cents ; and, although stated in the

WINDSOR,
*February,*
1836.

Rix
*vs.*
Smith.

commissioners return at $84 dollars, was paid by the administrator at 84 cents and no more ; and that it was entered in the commissioners report : the larger sum by mistake, and in consequence was allowed in the settlement to the administrator at a larger sum than 84 cents by a difference of $83,16.

Upon this statement the question arises, whether these claims are barred by the adjustment in 1820. It should be remarked, that the sum of $138,16, mentioned above, was paid in to the town treasury in the year 1816, and some years before the former settlement ; so that these facts might then have been taken advantage of to reduce the credit due to the administrator for the payment of the claim allowed to the town.

It is a general rule, that the decision of a court of competent jurisdiction, unappealed from and not reversed, is conclusive between all parties to the proceeding, upon the subject matter of the adjudication. And this rule holds, as well in reference to the decrees of probate court, as those of any other.

The great difficulty on this point has been to determine, how far the decision of that court is conclusive as to the result, or whether it is conclusive, only as to the precise matter adjudicated upon. Thus, in this case, the question may be asked, whether the decree of the probate court in 1820 is conclusive evidence, that the estate was indebted to the administrator in the sums there stated, or is it conclusive only, as the particular items of account, which appear from the record to have been in fact considered and adjudicated upon.

This question has arisen in two ways. In the first place, it has arisen, in a proceeding in another court. As in case of a suit in the common law courts, upon an administrator's bond, alleging, as a breach, his not having accounted for effects supposed to have come to his hands, and it appears that he has adjusted his account in the probate court, and obtained a decree for a specific balance. The question in such case arises, whether such decree is a bar to the suit. Such a case arose in Rutland county recently, and it was *held*, that the decree was not conclusive as to the result, but conclusive only of the matters, which appeared of record to have been adjudicated upon—and that, if the administrator had received money &c., for which, through fraud, accident or mistake, he had not accounted, and upon which the probate court had not in fact adjudicated, it might be recovered by suit on his bond, the decree of the probate court notwithstanding. For myself, I should have been as well satisfied had the decision been otherwise—and

WINDSOR,
February,
1836.

Rix
vs.
Smith.

had it been *held*, that the decree was conclusive, as to the ultimate balance, so long as it remained in force, like the adjudication of a court of law in the action of account. This would have driven the prosecutor into the probate court, and secured to that court the exclusive jurisdiction, in the first instance, over this subject of accounting, where I think it properly belongs.

Another way in which the question arises, is in a subsequent proceeding in the probate court; and here the question is, how far is that court bound by its previous adjudications.

On the one hand, it seems necessary to treat such previous adjudication, as conclusive to a certain extent, otherwise the proceeding would be nugatory. It will not answer to *hold*, that every thing connected with the settlement of an estate is, of course, open to litigation, so long as any cognizance can be taken by that court, of the concerns of the same estate.

On the other hand, it is indispensible to the purposes of justice, that the probate court, like every other court of extensive jurisdiction, should possess the power, to a certain extent, of revising and correcting its own proceedings.

This object is effected in the common law courts, by writ of error, petition for new trial, &c. But those proceedings being unknown in the probate court, there seems to be no other mode of attaining the object, but to concede to it the power of acting in a summary way, upon due application for that purpose. So long, however as the decree remains in force, it is equally conclusive upon that court, as upon other courts when drawn in question elsewhere. It is conclusive upon all matters actually adjudicated upon, but not as to matters not presented nor considered. This rule is analogous to that which obtains elsewhere. A judgment of this court is conclusive so long as it remains in force, notwithstanding the power of the court to grant a new trial. The only mode of assailing it or evading its conclusive effect, is through the direct action of the court upon it, in some mode allowed by law, for the purpose of annulling or reversing it.

So it is with the probate court. Its own sentence or decree is conclusive upon it, to the extent already mentioned, until by some proper application its action is called directly to annulling or correcting its decree.

To apply these principles to the present case. The decree of the court made, upon the adjustment of the administrators account in January 1820, is still in force. The claims in question were directly and specially acted upon on that occasion. The pay-

WINDSOR,
February,
1836

Rix
vs.
Smith.

ments were, in both instances, allowed to the administrator, and the effect of the evidence, in this case is merely to shew, that the decision was wrong, and that the credit given to the administrator, on that occasion, should have been for a less sum. Had the payment of the 138 dollars been subsequent to that decision, the case would be different, but having been previous, it furnished matter of defence to the administrator's claims, and not having been set up, the parties are concluded by that decree, so long as it remains in force.

Admitting the power of the probate court to overhaul the decision, still it is not competent for us to do so, on this occasion. The subject is not properly before us. This proceeding originates in an application, on the part of the administrator, to settle an account accruing subsequent to the settlement in 1820. He produced to the probate court two claims, which being allowed, the heirs take an appeal. In this court, they file objections to his claim, the subject is referred to commissioners, and then, in the first instance, the claims of the appellant are presented.

The proceeding appealed from was a mere supplemental proceeding. Nothing was before the probate court but such part of the administrator's account as had accrued since the former settlement ; and although the appeal brought the subject before us precisely as it stood there, yet it brought with it no legitimate enquiry, as to the correctness of the former decision, because no such enquiry was involved in the proceeding below. It was already *res adjudicata*. We cannot now overhaul that decree, and we are not at liberty to *hold*, that an appeal from a mere supplemental accounting, involves an investigation of the justice or propriety of the anterior proceedings of that court. Before we can be called upon to make such an investigation, the subject must be brought before that court, its action obtained, and the subject brought here, by appeal from a direct determination upon the point.

We consider then, that the previous decree of the probate court adjudicating specifically upon the subject, the same being in full force, is conclusive upon the occasion ; that no enquiry into the correctness of the decree was involved in the proceeding below, or brought hither by the appeal.

The item of $84 dollars appears to have been allowed by the commissioners against the estate, and also allowed to the administrator by the probate court. The last allowance was in 1820, and the former as early probably as 1815. We are now called upon to overhaul and virtually reverse these allowances, after a lapse of

WINDSOR,
*February,*
1836.

RIX
*vs.*
Smith.

fifteen or twenty years. Were the subject properly before us, we should hesitate to open to fresh litigation a subject which has been so long at rest.

There is, it must be admitted, a strong apparent equity in these claims in behalf of the heirs. But strong as it is, we cannot assume the responsibility of disregarding the most salutary and firmly established rules of law, and establishing a precedent of such dangerous tendency.

The order of sale is therefore affirmed, and the report of the commissioners, corrected upon the grounds here furnished, and judgment accordingly.

## ORANGE COUNTY,

### February Term, 1836.

---

Present, Hon. STEPHEN ROYCE,
   " SAMUEL S. PHELPS,
   " JACOB COLLAMER, }*Assistant Justices.*
   " ISAAC F. REDFIELD,