Decided 11 June, 1900.

**BLAIR *v.* BOSWELL.**

[ 61 Pac. 341.]

INJUNCTION—DAM—MINES.

If it be conceded that an upper riparian proprietor on a nonnavigable stream has a right to use the waters thereof to carry off tailings from his placer mines (about which the authorities are divided), still a court of equity will hesitate to enjoin a lower appropriator from damming the stream unless it is clear that the upper proprietor will be injured. That is not sufficiently evident in this case to justify equitable interference.

From Malheur : MORTON D. CLIFFORD, Judge.

Suit for an injunction by Jed A. Blair against L. Boswell and John Turner to enjoin the maintenance of dams constructed in a nonnavigable stream. The transcript shows that plaintiff's predecessors in interest built dams in Mormon Basin Creek, in Malheur County, Oregon, and made an appropriation of the water of that stream, which was conducted in ditches, and used in separating gold from the baser materials in which it was imbedded, after which the water was returned to the creek, carrying with it the tailings from certain placer mines. These dams are provided with gates, which, being opened, liberate the accumulated water, permitting it to flow down and flush the creek, carrying with it the debris. The defendant John Turner thereafter constructed dams in said creek about three miles below plaintiff's dams, and a ditch therefrom whereby he diverted the water so returned, and used it in operating his placer claim. The plaintiff alleges that he is the owner of the water of said

creek, and of the right to use the channel thereof from his dams to its mouth to carry off his tailings, and that the defendant unlawfully obstructed the flow of water therein, which will cause the bed of the stream to be filled with debris, and prevent the working of his mines. The answer having denied the material allegations of the complaint, a trial was had, resulting in a decree dismissing the suit, and plaintiff appeals.     AFFIRMED.

For appellant there was a brief over the name of *Olmstead & Miller*, with an oral argument by *Mr. Martin L. Olmstead*.

For respondent there was a brief and an oral argument by *Mr. John L. Rand*.

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

The testimony shows that defendant's lower dam is about eight feet high from the bed of the creek, and that the fall of water between plaintiff's and defendant's dams is 5.3 inches to the rod, so that, if it be assumed that the tailings from plaintiff's mine are arrested by defendant's dams, and settle horizontally in the bed of the creek, the surface of the precipitation would extend back from the line of obstruction only 18.11 rods, when, the reservoir becoming filled, the sedimentary deposit would flow over the top of the dam.   The defendant's ditch by which he diverts the water to his mine taps the creek at a point below a low-brush dam and above his said lower dam, and, if the debris fills the creek to the top of the latter, the ditch will be rendered useless, to avoid which the lower dam is provided with a gate, which, being opened, will permit the tailings to be carried down the creek. The distance from defendant's dams to the lower line of

plaintiff's placer claims is about one-half mile ; and when the fall of the creek is considered, showing that a dam 70.66 feet in height would be required to back the water to plaintiff's lower line, the probability of his sustaining injury by the maintenance of a dam eight feet high is certainly very remote.

It is contended that plaintiff and his predecessors in interest having deposited tailings in Mormon Basin Creek, and used the water thereof, for more than twenty years, to carry off the debris, a right was thereby acquired to continue such use, and, this being so, the court erred in denying the relief demanded. A conflict of judicial utterance exists respecting the right of a prior appropriator to use the water of a nonnavigable stream to carry off tailings. Thus, in California it would seem that such right is recognized : *Stiles* v. *Laird*, 5 Cal. 120 (63 Am. Dec. 110) ; *Irwin* v. *Phillips*, 5 Cal. 140 (63 Am. Dec. 113) ; *Sims* v. *Smith*, 7 Cal. 148 (68 Am. Dec. 233). In Montana, however, it has been held that prior locators of mining ground have no right to allow tailings to run free in a gulch, so as to render valueless the mining claims of subsequent locators below them : *Lincoln* v. *Rodgers*, 1 Mont. 217. Such, also, seems to be the rule in Idaho : *Ralston* v. *Plowman*, 1 Idaho, 595. Assuming, without deciding, that plaintiff has the right which he claims, a court of equity ought not to grant injunctive relief except when the right has been invaded in a manner which has resulted, or must inevitably result, in injury to the owner of the dominant estate, and, as the testimony shows that this cannot happen to plaintiff from the maintenance of defendant's dams as now constructed, no error was committed in denying the relief demanded ; for, if plaintiff could insist upon the uninterrupted flow of the water in Mormon Basin Creek because sediment from his mines had been carried down the stream by the current, he might

with equal propriety enjoin the erection of dams in Willow Creek, and in the Malheur, Snake, and Columbia rivers, into which each stream, respectively, flows, because it is possible that an atom of such sediment may reach the latter river.   The plaintiff having failed to show that he has suffered or would necessarily sustain any injury to his premises from the maintenance of defendant's dams, the decree is affirmed.                        AFFIRMED.

Decided 2 July, 1900.